[L. A. No. 3755. Department One.—October 15, 1914.]

In the Matter of the Estate of LOUIS SHIPP, Deceased.

MARRIAGE—NECESSITY OF SOLEMNIZATION.—Solemnization of a marriage is, since the amendment of 1895 to section 55 of the Civil Code, essential to its validity.

ID.—MARRIAGE WITHOUT LICENSE—OFFSPRING ENTITLED TO INHERIT AS LEGITIMATE.—The offspring of a marriage for which no license was secured, but which was otherwise legally solemnized, is entitled to inherit as the legitimate child of its father, by virtue of the clause ι of section 1387 of the Civil Code, providing that "the issue of all marriages null in law, or dissolved by divorce, are legitimate."

ID.—MEANING OF TERM "MARRIAGES NULL IN LAW."—The term "marriages null in law," as used in that section, is not limited only to the marriages which are subject to an action for annulment on one of the grounds specified in section 82 of the Civil Code, but applies to an attempted marriage, contracted in good faith, so far, at least, as one of the parties is concerned, where there is a concurrence of the elements of marriage, as defined in section 55 of the Civil Code; that is, where there has been the consent of parties capable of making a contract of marriage, followed by a solemnization authorized by the code.

APPEAL from a decree of the Superior Court of Los Angeles County distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

Arvid G. Alm, for Appellant.

G. F. McCulloch, for Respondent.

SLOSS, J.—The court below entered its decree distributing the estate of Louis Shipp in equal shares to Harry Shipp and to Donald Shipp, a minor. Harry Shipp appeals.

The only question is whether Donald Shipp was entitled to share in the estate. Harry Shipp, the appellant, was the son of Louis Shipp by a marriage which had been dissolved by divorce prior to 1909. He was, beyond any question, an heir of the decedent. Donald Shipp was born March 1, 1911, the offspring of a union between Louis Shipp and Ora McCoy. There was evidence which amply warranted the trial court

in believing that in January, 1909, a ceremony of marriage between Louis Shipp and Ora McCoy, thereafter known as Ora Shipp, had been solemnized by a priest; that the solemnization was regular in every respect save for the want of a license; that Ora McCoy believed that a license had been duly issued and that she entered into marital relations with Shipp in good faith, believing that she was his wife. The child was recognized by Louis Shipp as his son. Counsel for Donald Shipp stipulated at the hearing that there was no record of any license in the county of Los Angeles, where the ceremony was performed, nor any record of any marriage, and admitted that "the purported marriage was a void or null marriage." Perhaps, in thus admitting the invalidity of the marriage, he conceded too much. No doubt solemnization is, since the amendment of 1895 to section 55 of the Civil Code, essential to a valid marriage in this state. Whether, however, the failure to secure a license will nullify a marriage otherwise legally solemnized, is a question that may be debatable (Bishop on Marriage, Divorce, and Separation, sec. 426), and that has been left open by this court. (*Norman* v. *Norman*, 121 Cal. 621, 629, [66 Am. St. Rep. 74, 42 L. R. A. 343, 54 Pac. 143].) But granting, as has been said, the invalidity of the marriage, the respondent contends that the child is entitled to inherit as legitimate by virtue of the last clause of section 1387 of the Civil Code, providing that "The issue of all marriages null in law, or dissolved by divorce, are legitimate." The appellant seeks to give to this clause a very limited interpretation, his contention being that the term "marriages null in law," as here used, includes only the marriages which are subject to an action for annulment on one of the grounds specified in section 82 of the Civil Code. We think the provision should not be construed so narrowly. The statute was passed with the generous and kindly purpose of relieving children, to some extent, from the harsh consequences of illegitimacy—a *status* for which the children affected are in no degree morally responsible. The section should be liberally construed. (*Blythe* v. *Ayres,* 96 Cal. 532, 582, [19 L. R. A. 40, 31 Pac. 915].)

There may be some question whether the enactment applies to the offspring of marriages which are declared by the code to be "illegal and void," or "void from the beginning," such as incestuous marriages (sec. 59), marriages of whites with

negroes (sec. 60), or (under certain conditions) marriages between persons one of whom is already married. (Sec. 61.) This question was very fully argued in *Estate of Baldwin,* but the court, in deciding the case (162 Cal. 471, [123 Pac. 267]), did not find it necessary to express any opinion on the point. (See, however, *Graham* v. *Bennet,* 2 Cal. 503.) Be this as it may, we are satisfied that section 1387 should be held to apply to an attempted marriage, contracted in good faith, so far, at least, as one of the parties is concerned, where there is a concurrence of the elements of marriage, as defined in section 55 of the Civil Code; that is to say, where there has been the consent of parties capable of making a contract of marriage, followed by a solemnization authorized by the code. Such is the situation here. The parties were capable of entering into the marriage relation. They consented to do so, and to their consent was added a solemnization by a person authorized. If such marriage was vitiated by the want of a license, it was, nevertheless, within the beneficent scope of section 1387, and the child resulting from it should be saved the stigma and loss resulting from bastardy.

The respondent makes the further claim that the child was legitimated by adoption, in accordance with the provisions of section 230 of the Civil Code. Our conclusion on the question already discussed makes it unnecessary to consider the soundness of this position.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.