184 Cal.App.4th 507 (2010)
108 Cal.Rptr.3d 800
Estate of CHARLES DAVID LEWIS, JR., Deceased.
JOHN S. WILLIAMS, as Public Administrator, etc., Petitioner and Respondent,
v.
DIANE LARSON, Objector and Appellant.
No. G042100.
Court of Appeals of California, Fourth District, Division Three.
May 6, 2010.
*509 Weinstock, Manion, Reisman, Shore & Neumann, Sussan H. Shore and Blake A. Rummel for Objector and Appellant.
Nicholas S. Chrisos, County Counsel, James C. Harvey and Adrienne Sauro Heckman, Deputy County Counsel, for Petitioner and Respondent.

OPINION
IKOLA, J. 
Diane Larson appeals from the court's order appointing the public administrator to administer the estate of the deceased father of Larson's two children, who are decedent's sole heirs. We reverse because Probate Code section 8464 did not authorize the court to make such an appointment.[1]

FACTS
On April 1, 2009, Larson petitioned to administer decedent's estate. The petition stated decedent died intestate in Orange County, California, on March 11, and was survived by two children who lived with Larson in Illinois.
On April 7, the public administrator petitioned to administer decedent's estate, claiming Larson was "not the court-appointed guardian of the estates of the minors" and, even if she were, the court had discretion to appoint "another person entitled to appointment" as administrator. The public administrator stated he was "best suited and qualified ... to act as administrator" due to the "potential size and complexity of this estate."
*510 Also on April 7, the public administrator petitioned for letters of special administration. His petition stated decedent was believed to own a 28 percent interest in "TapouT LLC," a successful clothing and marketing company "associated with the sports of mixed-martial arts and ultimate fighting." Media reports suggested the value of that interest exceeded $10 million. Decedent was also thought to have substantial bank accounts, securities, "valuable automobiles (including a Porsche Turbo S and a Bentley) and potentially valuable intellectual property rights."
The next day, Larson petitioned for letters of special administration. Larson stated the minors were decedent's sole heirs and she was their biological mother and legal guardian. Larson submitted a brief stating that under Illinois law, she could not be appointed the minors' guardian since she is their living, custodial parent currently caring for them. The court responded to the competing petitions by appointing the public administrator as the special administrator of the estate, and later extended the letters of special administration through May 13. Prior to the May 13 hearing on the petitions, Larson reported that an Illinois court had appointed her the legal guardian of the person and estate of each minor, and that both minors had nominated her to act as administrator of their father's estate.
At the May 13 hearing, the public administrator argued he was "better suited to handle" the large, "complex" estate. Shortly before his death, decedent had stated his net worth to be "15 million dollars, and his annual income [to be] 1.5 million dollars." The estate required "a lot of leg work to track down the assets," such as taking custody of the cars. The public administrator had "three attorneys assigned to this case," and "a team of investigators and professional fiduciaries ...." The public administrator was local, whereas Larson lived in Illinois. The public administrator advised the court that section 8464 gave the court the discretion to appoint as the estate's administrator either the minors' guardian or "another person entitled to appointment."
Larson argued for appointment as the estate's administrator because she is the minors' guardian. She asserted there was no conflict between the children and her. Larson proposed that she be bonded in the amount of $750,000, arguing such sum was reasonable because the cars were "heavily encumbered." The court asked why Larson initially sought a bond of only $10,000. Larson replied that, at that time, she "had no idea what the estate was," but knew of her duty to report any additional assets marshaled. She argued she was qualified, bondable, and had competent experienced counsel; moreover, the "two sole heirs want their mother to take care of it." She asked the court, in exercising its discretion, to "consider what would best benefit the children."
*511 A potential creditor argued in favor of the public administrator administering the estate and its litigation with her. She stated the previous "$10,000 in assets reported [by Larson had seemed] to be fraudulent on its face." She stated she "would prefer someone who is appropriately bonded, who is local, and who can quickly get a hold of these assets and make the most out of them so that creditors like [her], who will have very sizeable claims against the estate, can ultimately be paid."
The court took the matter under submission. After reviewing the moving and opposing papers, the court approved the public administrator's petition, appointed him as the estate's administrator, and denied Larson's petition.

DISCUSSION
Larson's sole contention on appeal is that the court "erred by appointing the public administrator, whose statutory authority is below all persons other than creditors and legal strangers, rather than the mother and legal guardian of the children, who has primary statutory priority." Larson is correct. The court misconstrued the extent of its discretion under the governing statute, section 8464.
(1) A person's statutory priority to administer an estate is based on his or her relation to the decedent. Section 8461 lists the persons "entitled to appointment as administrator in the following order of priority": "(b) Children," "(p) Public Administrator." (Italics added.) Thus, children are second in order on the priority list, compared to the public administrator in 16th place.
But here, the children are minors. For that reason, section 8464 comes into play, providing: "If a person otherwise entitled to appointment as administrator is a person under the age of majority ..., the court in its discretion may appoint the guardian ... or another person entitled to appointment."
Larson interprets section 8464 to grant the court discretion to appoint only the guardian or another person in the same class of priority as the guardian, but not to grant the court discretion to appoint another person in a lower class of priority than the guardian. The public administrator disagrees, noting section 8464 authorizes the court to appoint the guardian "or another person entitled to appointment," thereby allowing the court to select "another person" without regard to the statutory priority established in section 8461. Because the public administrator appears on the statutory list, he contends he is a person entitled to appointment.
*512 (2) We interpret a statute de novo, applying relevant rules of statutory construction. (Miller v. Collectors Universe, Inc. (2008) 159 Cal.App.4th 988, 999 [72 Cal.Rptr.3d 194].) First among these rules is that "the `plain meaning' of the statute's words" governs. (Ibid.) A court's role "is simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted ...." (Code Civ. Proc., § 1858.) But "when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment." (Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115].) Finally, an extrinsic aid to be used in construing a statute is "the statutory scheme of which the statute is a part." (People v. Woodhead (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)
Larson relies on Estate of Turner (1904) 143 Cal. 438 [77 P. 144] (Turner), where our Supreme Court construed a predecessor of section 8464Code of Civil Procedure former section 1368 (the predecessor statute), which provided: "`If any person entitled to administration is a minor, ... letters must be granted to his or her guardian, or any other person entitled to letters of administration, in the discretion of the court.'" (Turner, at pp. 439-440.) In Turner, the adult brother of the intestate decedent sought appointment as administrator, as did the guardian of the decedent's minor brother. (Id. at p. 439.) The issue was whether, where competing petitioners are members of the same class, the predecessor statute required that letters of administration "must be granted to the person who is not a minor." (Id. at p. 440.) Our Supreme Court answered this question in the negative and affirmed the court's order issuing letters of administration to the guardian of the minor brother. (Id. at pp. 439, 444.)
In reaching this conclusion, Turner, supra, 143 Cal. 438, construed the phrase in the predecessor statute, "`or any other person entitled to letters of administration'" (id. at p. 441, italics omitted), and considered the same two alternative interpretations advocated by the parties here: "[I]t must either apply to persons in the same class as the minor, or to persons in inferior classes who ... are entitled, in the absence of others having superior rights, to a grant of letters" (id. at p. 442). The court rejected the second alternative, explaining: "[N]o good reason can be suggested why, when the legislature removed the disability from the minor by conferring a right to representation on his guardian, it was intended that the only effect of the application would be to give the court discretion to either appoint him, or some member of an inferior class. This would be according the minor no substantial benefit or *513 advantage, and the section doubtless contemplated the conferring of some substantial right, and this could be best accomplished by placing him in the class to which he would belong if he were an adult, and on an equality with other members of that class, not be placing him on a level with members of an inferior class, or by importing such members into his class and putting them on an equality with him." (Ibid., italics added.)
(3) Our Supreme Court concluded: "Members of an inferior class are never entitled to administer when there is a member of a superior class who is not disqualified, and by qualifying the minor of such superior class to obtain a grant through his guardian it is hardly conceivable that the legislature intended to confer on him no greater privilege than to contest with others of a subordinate class for the discretionary award of a grant of administration. [¶] Such a construction would neither be consonant with fairness nor justice to the minor, and we are satisfied that this was not the legislative intent, but that the expression `or any other person entitled to administer' was intended to and does apply to all persons who are entitled to administer as being of the same class as the minor would be, were he an adult." (Turner, supra, 143 Cal. at pp. 442-443.)
Further, Turner found this interpretation of the predecessor statute to be harmonious with Code of Civil Procedure former section 1367, which "declared that, `when there are several persons equally entitled to the administration the court may grant letters to one or more of them.'" (Turner, supra, 143 Cal. at p. 443.) That section is the predecessor to current section 8467, which states: "If several persons have equal priority for appointment as administrator, the court may appoint one or more of them, or if such persons are unable to agree, the court may appoint the public administrator or a disinterested person in the same or the next lower class of priority as the persons who are unable to agree."
(4) The subsequent case of Estate of Waltz (1966) 244 Cal.App.2d 217, 222 [52 Cal.Rptr. 880] (Waltz) followed Turner's holding and stated: "The guardian is to be considered a member of the class to which his ward belongs and ahead of all lower classes, and the court has no discretion to appoint a person of an inferior class in preference to the guardian."
But the public administrator tries to distinguish the predecessor statute (and therefore Turner, which construed it) based on the statute's use of the mandatory word "must": "`If any person entitled to administration is a minor, ... letters must be granted to his or her guardian, or any other person entitled to letters of administration, in the discretion of the court.'" (Turner, supra, 143 Cal. at pp. 439-440, italics added.) This distinction is insignificant to the issue before us. Similarly to section 8464, the predecessor statute *514 granted the court discretion to select between a guardian and any other person entitled to administer an estate. In other words, an administrator "must" be appointed. But the choice between the guardian and "any other person," construed by the court to be any other person in the same priority class, is discretionary.
Finally, the public administrator points out that Turner and Waltz were decided in 1904 and 1966, respectively. He argues probate law was changed by the 1988 enactment of section 8402, subdivision (a)(3), which provides that a person is incompetent to be administrator if, under section 8502 (removal of personal representative), he or she (1) is not capable "of properly executing the duties of the office" (id., subd. (b)) or (2) should be barred from appointment "for protection of the estate or interested persons" (id., subd. (d)). He notes the Legislature, by enacting section 8402, subdivision (a)(3), intended to enable "the court to deny appointment of a personal representative if the personal representative would be subject to removal, for example, for a conflict of interest that is sufficient to require removal." (Cal. Law Revision Com. com., 53A West's Ann. Prob. Code (1991 ed.) foll. § 8402, p. 198.) He extrapolates that probate law no longer accords an absolute right to appointment to a person with priority. But here, the court did not find Larson was incompetent within the meaning of section 8402. Nor does the enactment of section 8402, subdivision (a)(3), suggest that the Legislature intended to change the meaning of section 8464 without revising the statutory language. If the Legislature wished to abolish Turner's construction of section 8464, it could have easily amended the statute to do so.[2] (See Marina Point, Ltd. v. Wolfson, supra, 30 Cal.3d at p. 734.)
(5) The court's order must be reversed because, in the absence of a finding that Larson was not competent to act as personal representative, the court lacked statutory authority to appoint the public administrator, instead of Larson, to administer decedent's estate and thereby abused its discretion under section 8464. (Estate of St. John (1937) 8 Cal.2d 175, 176-177 [64 P.2d 725] [court's order appointing administrator reviewed for abuse of discretion].)

*515 DISPOSITION
The order is reversed. Larson shall recover her costs on appeal.
Moore, Acting P. J., and Aronson, J., concurred.
NOTES
[1] All statutory references are to the Probate Code unless otherwise stated. The order granting letters of general administration is appealable under section 1303, subdivision (a).
[2] For example, in section 8465, subdivision (c), the Legislature clearly specified the limits on the court's discretion based on priority class: "(c) If a person making a nomination for appointment of an administrator is [not in one of the first six priority classes or the eighth class], the court in its discretion may appoint either the nominee or a person of a class lower in priority to that of the person making the nomination, but other persons of the class of the person making the nomination have priority over the nominee." Similarly, section 8467 contains express language concerning the court's authority to appoint persons of a lower priority class: "If several persons have equal priority for appointment as administrator, the court may appoint one or more of them, or if such persons are unable to agree, the court may appoint the public administrator or a disinterested person in the same or the next lower class of priority as the persons who are unable to agree."