[No. G042957. Fourth Dist., Div. Three. Jan. 11, 2011.]

In re the Marriage of JOSEPH S. and TANYA M. CANTARELLA.
JOSEPH S. CANTARELLA, Appellant, v.
TANYA M. CANTARELLA, Respondent.

**COUNSEL**

Law Offices of Sarah A. Stockwell and Sarah A. Stockwell for Appellant.

Law Offices of Michael J. Rand and Michael J. Rand for Respondent.

**OPINION**

**IKOLA, J.**—In this case, we consider whether registration of a marriage certificate was vital to the validity of a marriage under the Family Law Act (Civ. Code, former § 4000 et seq.).[1]

In 1991, a judge conducted a marriage ceremony for Joseph S. Cantarella (husband) and Tanya M. Cantarella (wife). The marriage certificate, however, was twice rejected for registration due to a technical error on the document. After the second rejection, the parties decided *not* to resubmit the certificate for registration, possibly to avoid the tax consequences of marriage.[2] As a result, the 1991 marriage was never registered. Nine to 11 years later (between 2000 and 2002), the parties were married in a new ceremony.

---

[1] All statutory references are to the Civil Code unless otherwise stated.

Effective January 1, 1994, Family Code section 300 et seq. superseded the Family Law Act without substantive change. (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 300, p. 169; 11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, § 42, p. 81.)

[2] We take judicial notice of the record in the companion appeal, *Cantarella v. Cantarella* (Jan. 11, 2011, G042115) (nonpub. opn.). (Evid. Code, § 452, subd. (d).) In a February 24, 2009 motion, wife had asked to set aside parts of the dissolution judgment. In husband's March 25, 2009 response to wife's motion, he declared that wife chose not to register the 1991 marriage certificate after talking with their accountant and learning they could save $400 a year in taxes by remaining single. He declared that once the tax savings expired, they engaged in a new marriage ceremony. Wife's March 26, 2009 reply did not deny this allegation.

In 2008, the parties dissolved the marriage. As part of the dissolution judgment, the family court ordered husband to pay wife spousal support for several years in accordance with an agreement between the parties.[3]

Husband subsequently sought modification of the spousal support order. At the hearing on his order to show cause, the parties disagreed about how long they had been married. Husband argued the parties were married in 2000. But wife—contrary to a filing she had made earlier in the dissolution proceeding—claimed the parties were married in 1991. The court found the marriage was of long duration and therefore awarded wife permanent spousal support.

■ Husband appeals from the spousal support order.[4] We affirm, holding the 1991 marriage is valid even though the marriage certificate was never registered.

## FACTS

In husband's application for modification of the spousal support order, he declared his income had decreased due to the poor economy. At the August 2009 hearing on the order to show cause, the court and the attorneys focused on husband's and wife's respective current incomes.

Later, at the end of the hearing, the court asked the parties' attorneys how long the parties had been married. Wife's counsel replied that in wife's view, the marriage had lasted eight years and four months (consistent with a marriage date of 2000). Wife corrected her counsel, stating the marriage took place in 1991. Husband disagreed and claimed the year of marriage was 2001. Wife's counsel then informed the court that the parties had a marriage license and ceremony in 1991, the license was submitted for registration but returned due to an error in the judge's address, and wife tried to have the error corrected. Husband countered the parties were "legally married" in 2002. Wife's counsel acknowledged that the parties "went through a second ceremony." The court asked husband whether, at the time of the 1991 ceremony, he believed the marriage was legal. Husband replied, "I want to say no." The court stated, "I don't believe you."

The court found (1) the marriage was a putative one between 1991 and the second "legal ceremony," and (2) the second ceremony occurred when the parties learned the original marriage was invalid and decided to "do it the right way." The court placed no termination date on spousal support, but stated this

---

[3] Under the agreement, in lieu of spousal support, husband was to employ wife as an accountant for the family business at an annual salary of $38,000, plus medical benefits for wife and the parties' then 14-year-old daughter, until the daughter graduated from high school.

[4] The order is appealable as a postjudgment order. (Code Civ. Proc., § 904.1, subd. (a)(2).)

was "modifiable." The minute order of the hearing states, as to spousal support, that the court, "[b]ased upon [wife's] testimony," found "this is a putative marriage of long duration" and ordered husband to pay spousal support until either party's death, wife's remarriage, or further order of the court. But the court's written findings and order after the hearing included a finding (based on a checked box on a standard form) that the parties were married for 17 years, i.e., from 1991.

## DISCUSSION

Husband contends the "court erred in finding a putative marriage of long duration where [wife] did not set forth any facts establishing a good faith belief in the existence of a valid marriage" in 1991. Wife counters the 1991 marriage is valid (not putative), arguing the parties "fully complied with all procedural requirements for marriage [in 1991] and were, therefore, validly married at all times since that date."

Wife's argument requires us to determine whether the parties' failure to register a marriage certificate invalidated the 1991 marriage. To do so, we must interpret the Family Law Act (former § 4000 et seq.), which governed marriage prior to the 1994 effective date of the Family Code.

■ "We interpret a statute de novo, applying relevant rules of statutory construction. [Citation.] First among these rules is that 'the "plain meaning" of the statute's words' governs." (*Estate of Lewis* (2010) 184 Cal.App.4th 507, 512 [108 Cal.Rptr.3d 800].) If the language is ambiguous, extrinsic aids (such as the statutory scheme) may be used to construe a statute. (*Ibid.*)

■ The Family Law Act defined marriage as follows: "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. Consent alone will not constitute marriage; it must be followed by the issuance of a license and solemnization . . . ." (Former § 4100.) Thus, former section 4100 identified four elements of a marriage: (1) consent, (2) capacity to consent, (3) a license, and (4) solemnization.

■ Former section 4200 set forth two further requirements for marriage: (1) authentication of the marriage, and (2) registration of the marriage.[5] This

---

[5] Under the Family Law Act, the person who performed a marriage ceremony was required to return to the county recorder a "certificate of registry of marriage." (Former § 4202.) A "marriage certificate," on the other hand, was a separate document provided by that person to the parties upon their request. (Former § 4209.) References in this opinion to a "certificate" signify a certificate of registry of marriage, unless otherwise specified.

section stated: "Marriage must be licensed, solemnized, authenticated, and the certificate of registry of marriage filed as provided in this article; but noncompliance with its provisions by others than a party to a marriage does not invalidate it."[6]

■ Other sections of the Family Law Act dealt specifically with each requirement. Former section 4201 (governing marriage licenses) required the parties to obtain a license from the county clerk prior to a marriage. (Former § 4201, subd. (a).) The license showed the parties' identities, full names, residences, and ages. (*Ibid.*) The section authorized the county clerk to issue a license only if both parties were "capable of consenting to and consummating marriage"; the clerk could examine the parties under oath and request documentary proof from them. (Former § 4201, subd. (b).)

■ "Solemnization" denoted a ceremony where the parties declared, "in the presence of the person solemnizing the marriage and necessary witnesses, that they take each other as husband and wife." (Former § 4206.) "The person solemnizing a marriage must first require the presentation of the marriage license; and if he has any reason to doubt the correctness of its statement of facts, he must first satisfy himself of its correctness, and for that purpose he may administer oaths and examine the parties and witnesses . . . ." (Former § 4207.) ■ Under former section 4202, the person solemnizing the marriage (the officiant) was required to complete the certificate, have it signed by a witness to the ceremony, and return it to the county recorder within 30 days of the ceremony.

■ Health and Safety Code former section 10350, set forth the minimum disclosures required in a "certificate of registry of marriage." Required information beyond that mandated in a marriage license included each party's date of birth, birthplace, parents' names and birthplaces, mother's maiden name, number of previous marriages, marital status, and maiden name if a previously married female, as well as the official position and address of the officiant. (*Ibid.*)

---

Under current law, one document serves as both marriage license and certificate: "[T]he document issued by the county clerk is a marriage license until it is registered with the county recorder, at which time the license becomes a marriage certificate." (Fam. Code, § 300, subd. (b).) Even before the effective date of Family Code section 300, subdivision (b) in 2008, a single form sometimes served as a combined license and certificate of registry of marriage. (*Estate of DePasse* (2002) 97 Cal.App.4th 92, 101 [118 Cal.Rptr.2d 143] (*DePasse*); Health & Saf. Code, former § 10300.)

[6] We cannot necessarily infer the reverse is true—i.e., that a *party's* noncompliance with a statutory requirement necessarily invalidates a marriage. In *Argonaut Ins. Co. v. Industrial Acc. Com.* (1962) 204 Cal.App.2d 805 [23 Cal.Rptr. 1] (*Argonaut*), the Court of Appeal held the parties' deliberate use of false names on a marriage license did not invalidate the license or the marriage. (*Id.* at p. 810.) *Argonaut* stated: "In view of the policy of the law to promote and protect the marriage relationship, it cannot be held that the Legislature meant to declare by inference an additional ground upon which a marriage must be found void." (*Ibid.*)

These statutes did not specify which of the foregoing requirements were essential to a valid marriage in 1991. Nor does case law answer the question. *DePasse* held a marriage license is necessary to a valid marriage *under the Family Code adopted in 1992*: "In 1992 the Legislature reorganized the major family law statutes into a new code, entitled the Family Code. [Citation.] The new code specifically addressed the question of whether the term 'shall' is directory or mandatory. [Family Code section] 12 provides that the use of the term 'shall' in the Family Code indicates that the required action is mandatory. [Citations.] [Family Code sections] 306 [requiring a license, solemnization, authentication, and registration, but specifying noncompliance by a nonparty does not invalidate the marriage], 350, and 421 all employ the word 'shall.' Thus according to the plain language of the statutes, a license is a mandatory requirement for a valid marriage in California."[7] (*DePasse, supra,* 97 Cal.App.4th at p. 102.) *DePasse* did not address whether the license requirement under the prior Family Law Act was mandatory or directory.

■ The Family Law Act itself, however, specified certain circumstances under which marriages were void or voidable. Bigamous, polygamous, or incestuous purported marriages were statutorily "void from the beginning." (Former §§ 4400, 4401.) Marriages were voidable if, generally, at the time of marriage (1) a party was incapable of consenting or of unsound mind or physically incapable of marrying; (2) a party's prior spouse was alive, but was absent and not known to the party to be alive; or (3) a party's consent was obtained by fraud or force. (Former § 4425.)

These statutes shared a common theme: a marriage was actually or potentially invalid if a party did not consent to it or lacked the ability to consent. The statutes thereby reinforced the Family Law Act's clear requirement, in its substantive definition of "marriage," that the parties must consent to the marital relationship and be capable of consenting. (Former § 4100.) Indeed, former section 4100 (containing the marriage definition) is the only section relevant to our discussion that was contained in the article of the Family Law Act entitled "*Validity* of Marriage." (Italics added.) Correlative to this, under former section 4200, a *nonparty's* noncompliance with a statutory requirement did not invalidate a marriage. The likely basis for this proviso

---

[7] The court left open the issue of whether the parties could cure the defect of failing to obtain a license. (*DePasse, supra,* 97 Cal.App.4th at p. 104.) In dictum, *DePasse* noted that "a failure by the person solemnizing the marriage to return the certificate of registry would not invalidate the marriage," citing Family Code section 306, the successor statute to former section 4202, which both specify that noncompliance by a *nonparty* does not invalidate a marriage. (97 Cal.App.4th at p. 106.) But as to a *party's* failure to register a license under the Family Code, *DePasse*'s analysis of the mandatory nature of the term "shall" in the Family Code arguably suggests a contrary conclusion to the one we reach here under the Family Law Act.

was that a nonparty's failure to perform a procedural duty has little to no bearing on the parties' consent or ability to consent.

■ Likewise, other statutory requirements for marriage, such as a license and solemnization, revolved around the core element of the parties' consent and ability to consent. In the marriage license, the parties disclosed their ages—a prime factor affecting their capacity to consent. (Former § 4101, subd. (a) [a party who is at least 18 years old is capable of consenting to marriage].) The county clerk and an officiant were authorized, respectively, to issue a license or solemnize a marriage only if the parties were capable of consenting to marriage. On the marriage certificate, a required disclosure was each party's marital status, presumably to deter bigamy. Most importantly, a marriage ceremony culminated in the parties' declaration that they accepted each other as husband and wife. Common sense and tradition tells us this is the moment at which the parties' valid consent creates a marriage. Indeed, once solemnized, a marriage is presumed valid (Evid. Code, § 663) and a person disputing its validity bears the burden of proving it void (*DePasse, supra*, 97 Cal.App.4th at p. 108).

■ In contrast, *registration* of a certificate did little to ensure the parties had validly consented to marriage, but rather served a recordkeeping function. Registration occurred *after* the parties had solemnly consented to marriage in a ceremony and *after* the county clerk and the officiant had satisfied themselves the parties' consent was knowing, voluntary, and valid. Additionally, registration was the duty of an officiant (former § 4200), i.e., of a *nonparty* whose noncompliance with statutory requirements did not void a marriage (former § 4202).

In the rare instance where a *party* failed to register public evidence of the marriage, such failure might be inadvertent or involuntary (as in the case of a rejected certificate) or might instead indicate a lack of consent at that time. We do not believe the Legislature intended a marriage to be thereby rendered invalid.[8] True, the keeping of accurate and complete marriage records benefits the public.[9] But this goal pales compared to the societal importance of

---

[8] Wife argues a nonparty may have been responsible for the nonregistration of the 1991 marriage certificate, speculating that the judge who performed the 1991 ceremony, his or her staff, or the county recorder's office, may have erroneously failed to register it. On appeal, however, wife acknowledges that the rejected document "was returned to the parties." Thus, at some point in time, the parties themselves failed to resubmit the certificate. We must therefore decide whether a *party's* failure to register a certificate is fatal to the marriage's validity.

[9] The importance of marriage registration was recognized in former section 4204, which required the county recorder to notify parties whose certificate had not been filed that their "license will automatically expire on the date shown on the face of the license" and that the officiant was obliged "to return the certificate of registry and endorsed license to the recorder's office within 30 days after the ceremony." Even confidential marriages (whereby an unmarried

recognizing the validity of marriages to which parties have consented. To hold that a failure by a party to register a certificate voids a marriage would invalidate "marriages already solemnized in this state and would, among other results, affect the marital status of the parties, their property rights and rights of inheritance." (*Argonaut, supra,* 204 Cal.App.2d at p. 810.) In wife's words, it would "negate the manifold mutual fiduciary and legal obligations the parties understood they were incurring," due to "a technical misstep along the way."

■ Other sections of the statutory scheme support our conclusion a marriage was valid under the Family Law Act despite a failure to register a certificate, regardless of who bore the responsibility for the nonregistration (whether a party or nonparty). For example, under former section 4210, if no record of the solemnization of a marriage was known to exist, the parties could buy "a License and Certificate of Declaration of Marriage" from the county clerk and had to file it with the local registrar of marriages.[10] Under former section 4203, if a certificate of registry of marriage was lost or destroyed after the marriage ceremony but before filing with the county recorder, the officiant had to obtain a duplicate certificate of registry of marriage from the county clerk (and presumably register it).[11] Significantly, neither statute stated that in the interim period between the marriage ceremony and the filing of a duplicate or substitute certificate, the marriage was invalid. Finally, registration of a certificate was not the only manner in which solemnization of a marriage could be evidenced: Under former section 4103, "[c]onsent to marriage and solemnization thereof [could] be proved under the same general rules of evidence as facts are proved in other cases."

---

man and woman who had lived together as husband and wife obtained a confidential license from the county clerk) had to be registered, although the certificate was treated as a permanent record not generally open to public inspection. (Former § 4213.) In 2006, the Legislature declined to adopt a proposed amendment to Family Code section 500, which would have deleted the requirement that the parties to a confidential marriage have previously lived together. A bill analysis warned that if the requirement of living together were deleted, such encouragement of "the use of confidential marriages would diminish the pool of information contained in public records." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1102 (2005–2006 Reg. Sess.) as amended June 8, 2005, p. 8.)

[10] Family Code section 425 continued former section 4210 without substantive change (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code, *supra,* foll. § 425, p. 234), except that the parties may purchase a License and Certificate of Declaration of Marriage only "one year or more from the date of the marriage."

[11] Family Code section 360 restated former section 4203 without substantive change (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code, *supra,* foll. § 360, p. 219), except that a duplicative certificate of registry (or a marriage license subsequent to the 2008 effective date of Fam. Code, § 300, subd. (b)) "may not be issued later than one year after issuance of the original license and shall be returned by the person solemnizing the marriage to the county recorder within one year of the issuance date shown on the original marriage license." (Fam. Code, § 360, subd. (b).)

Accordingly, we affirm the family court's ruling (in its written findings and order after hearing) that the parties were married for 17 years.[12]

## DISPOSITION

The order is affirmed. In the interests of justice, each party shall bear their own attorney fees and costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.

---

[12] If this were a putative marriage, then wife's alleged intent to delay the marriage for purposes of tax avoidance would certainly be relevant. But we hold the 1991 marriage was valid, not putative. We realize this holding could allow a party to conceal a marriage for tax reasons, but later claim it for purposes of spousal support, as may have happened here. We note husband allowed wife to conceal the 1991 marriage from the Internal Revenue Service. In his reply brief he raises the issue that wife should be estopped from claiming they were married in 1991, but he fails to show good cause for initiating this argument in his reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766 [60 Cal.Rptr.2d 770].) The tax consequences of our decision, if any, are not before us.