Filed 3/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MICHAEL CHANEY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEANNE NETTERSTROM,<br><br>    Defendant and Appellant. | 2d Civil No.B282120<br>(Super. Ct. No. 15FL-0528)<br>(San Luis Obispo County) |

After three years of dating and cohabitation, appellant Leanne Netterstrom and respondent Michael Chaney applied for a confidential marriage license and exchanged vows at a solemnization ceremony. After the ceremony, the officiant gave the signed license to the parties, who promised to file it with the county. For personal and financial reasons, the parties did not return the license to the county. Four years later, Chaney petitioned for dissolution of marriage. Netterstrom moved to quash on the ground that she and Chaney are not married. The trial court denied the motion to quash.

Rule 1: "[A] marriage shall be licensed, solemnized and authenticated, and the authenticated marriage license shall be returned to the county recorder of the county where the marriage

license was issued . . . .  Noncompliance with this part by a nonparty to the marriage does not invalidate the marriage."[1]

Rule 2:  "The person solemnizing the marriage shall return the marriage license . . . to the county recorder . . . within 10 days after the ceremony."[2]

The law requires an officiant to return the license to the county; however, noncompliance by a nonparty does not necessarily invalidate an otherwise lawful marriage.  (§ 306.) Nor was the marriage invalidated by the parties' conduct in keeping the license or claiming "single" status to tax authorities and a bank.  Once they secured a license from the county, exchanged vows at a solemnization ceremony and the license was authenticated, the parties were married.  We affirm the trial court's validation of the marriage.

## FACTS AND PROCEDURAL HISTORY

The parties began dating in 2008 and cohabiting in 2011. In the fall of 2011, Netterstrom agreed to what was, in her mind, a "commitment ceremony."  She had reasons to avoid marriage: she had been married twice before; "I never wanted to get married again;" she did not want to lose her Social Security widow's benefits by remarrying; and Chaney gambled and was financially unstable.  In Chaney's view, he proposed marriage to Netterstrom and she accepted.

The parties obtained a confidential marriage license from the county clerk.[3]  Netterstrom claimed at trial that this was a

---

[1]  Family Code, section 306.  Unlabeled statutory references in this opinion are to the Family Code.

[2]  Section 423.

[3]  The parties must personally appear before the county clerk to obtain a confidential marriage license.  (§ 501.)

ruse: the parties only wanted to appease relatives who disapproved of unwedded cohabitation. The trial court discredited Netterstrom's testimony, noting that the parties could have held a ceremony without a license, and her relatives would be none the wiser.

It is undisputed that the parties participated in a solemnization ceremony in Cambria on November 11, 2011. The officiant signed the marriage license and gave it to the parties with the understanding that they would file it. The trial court found that in doing so, the officiant did not perform his duty to return the license. It concluded, however, that this dereliction did not invalidate the marriage.

Chaney admittedly allowed the time for returning the license to lapse. Netterstrom asked him not to file it because she did not want to lose her Social Security benefits. Chaney told Netterstrom "it was her decision as to whether or not the marriage license would be returned to the county recorder's office"; she advised him that "she decided she didn't want to mail the certificate in." It is undisputed that neither of the parties returned the signed marriage license to the county. Instead, it remained in Chaney's desk, where Netterstrom found it in July 2015.

After exchanging vows, Netterstrom occasionally called herself Leanne Chaney, and the couple openly referred to each other as husband and wife. Despite telling friends and family that they were married, the parties pretended to be unmarried when it suited their financial interests. They filed tax returns as "single" people. They refinanced Chaney's home in 2013, stating on the loan application that they are unmarried. The deed of

trust securing repayment of the loan is in the names of Chaney and Netterstrom as "unmarried" individuals.

In a change of ownership document for the house, Chaney notified the assessor's office of a transfer between "domestic partners," not between husband and wife. Title was taken in the name of "Michael Chaney, an unmarried man, and Leanne Netterstrom, an unmarried woman, as joint tenants."

In 2015, Chaney petitioned for dissolution of marriage. In response to the petition, Netterstrom declared that she and Chaney are not married. She asked the trial court to quash the summons and petition on the ground that there is no marriage, and to dismiss the action.

The trial court ruled that the parties are married. The statement of decision recites that the parties participated in a ceremony, then wittingly kept the completed marriage license instead of returning it to the county. Family members toasted the marriage at a party after the ceremony. Netterstrom announced the marriage on Facebook and thereafter referred to Chaney as her "husband." When the relationship ended, Netterstrom lamented the end of the "marriage."

The trial court acknowledged that the parties filed as "single" taxpayers throughout their marriage, to suit their financial interests. Nonetheless, it found that the parties consented to marriage by not calling off the ceremony before the exchange of vows. Though the parties agreed to retain the marriage license, the court deemed this "unconvincing" evidence that consent was lacking. The court wrote that the wedding officiant failed to perform his duty to return the license, but this did not invalidate the marriage.

4

## DISCUSSION

If either party denies a marriage, the other party may seek to have the validity of the marriage judicially determined and declared. (§ 309; Health & Saf. Code, § 103450, subd. (a) [a party may petition to judicially establish the fact of an unregistered marriage].) "[T]he Legislature has enacted a comprehensive scheme regulating marriage in California . . . setting forth in detail the procedures to be followed." (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1079.) Our analysis requires us to review and interpret the statutes governing marriage, to determine whether the requirements for a valid marriage have been met. This presents a question of law. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119.)

"Marriage is a personal relation arising out of a civil contract between two persons, to which the consent of the parties capable of making that contract is necessary. Consent alone does not constitute marriage. Consent must be followed by the issuance of a license and solemnization." (§ 300, subd. (a).) To solemnize the marriage, "the parties shall declare, in the physical presence of the person solemnizing the marriage and necessary witnesses, that they take each other as spouses." (§ 420, subd. (a).)

Following solemnization, the marriage license "shall be returned" to the county. (§ 306.) "Returned" means presented in person or postmarked before the statutory deadline. (§ 359, subd. (f).) A confidential marriage document "is a marriage license until it is registered with the county clerk, at which time the license becomes a marriage certificate." (§ 500.5.)[4]

---

[4] Once registered, the certificate becomes part of the state's vital statistics. (Health & Saf. Code, § 102100 ["[e]ach . . .

5

The statutory scheme does not contemplate what happens if the wedded couple retains the signed license. The Legislature did not address this eventuality because it has placed the burden of returning the license to the county for registration squarely upon the wedding officiant.

The law on this point is clear. It states that a confidential marriage license "*shall be* returned by the person solemnizing the marriage to the office of the county clerk in the county in which the license was issued within 10 days after the ceremony." (§ 506, subd. (c), italics added; § 423 ["The person solemnizing the marriage *shall return* the marriage license . . . to the county recorder . . . within 10 days of the ceremony." Italics added]; Health & Saf. Code, § 103150 [A marriage "*shall be* registered by the person performing the ceremony." Italics added].) The word "shall" means that the act is mandatory. (§ 12.)

Applying the statutes addressing the creation of marriage, we conclude that the parties in this case are married. They applied in person for a confidential marriage license at the office of the county clerk. They exchanged vows declaring each other spouses at a solemnization ceremony. After the ceremony, the officiant authenticated the marriage license; he was not told that the wedding was a ruse. At that point, the parties were married. The officiant had a legal duty to return the license to the county. His failure to perform that duty "does not invalidate the marriage." (§ 306.)

---

marriage that occurs in the state shall be registered . . . on the prescribed certificate forms"]; § 511, subd. (d) [the county clerk must transmit a copy of the original confidential marriage certificate to the State Registrar of Vital Statistics].)

6

Netterstrom relies on *Estate of DePasse* (2002) 97 Cal.App.4th 92 (overruled in part in *Ceja v. Rudolph & Sletten, supra*, 56 Cal.4th at p. 1126). *DePasse* is factually inapposite. In *DePasse*, the parties did not obtain a marriage license before their "marriage ceremony"; therefore, there was no license to return for registration. The burden of obtaining a marriage license was on the parties, who had to prove their identity, capacity to marry, and lack of intoxication at the time of application. (*Id*. at pp. 98-100.) The absence of a license was fatal to the claim of a valid marriage in *DePasse*. (*Id*. at p. 95.) In our case, by contrast, the parties indisputably secured a valid license and solemnized their vows. The burden was then on the officiant, not the parties, to return the license.

The case of *In re Marriage of Cantarella* (2011) 191 Cal.App.4th 916 (*Cantarella*) disposes of Netterstrom's claim that no marriage was formed because the parties did not return the license. As here, the question in *Cantarella* was "whether a *party's* failure to register a certificate is fatal to the marriage's validity." (*Id*. at p. 924, fn. 8.) *Cantarella* holds that failure to return the license does not invalidate the marriage "regardless of who bore the responsibility for the nonregistration (whether a party or nonparty)." (*Id*. at p. 925.)

In *Cantarella*, the parties had a marriage ceremony before a judge in 1991; the certificate was rejected for registration due to a technical error on the document. "After the second rejection, the parties decided *not* to submit the certificate for registration, possibly to avoid the tax consequences of marriage." (*Cantarella, supra* 191 Cal.App.4th at p. 919.) A decade later, they had a second wedding ceremony. At dissolution, in 2008, the husband

7

claimed that the marriage was not of long duration because the unregistered 1991 marriage was invalid. (*Id*. at pp. 919-921.)

The appeal required the court "to determine whether the parties' failure to register a marriage certificate invalidated the 1991 marriage." (*Cantarella*, *supra*, 191 Cal.App.4th at p. 921.) The court emphasized that a marriage is not invalidated if the *officiant* fails to comply with the statutory mandate to return the license to the county. The court declined to infer that a *party's* noncompliance with the same registration requirement necessarily invalidates a marriage. (*Id*. at p. 922, fn. 6.)[5]

The court in *Cantarella* reasoned that the validity of a marriage is determined by the parties' consent to it: "a marriage was actually or potentially invalid if a party did not consent to it or lacked the ability to consent." (*Cantarella*, *supra*, 191 Cal.App.4th at p. 923.) "Most importantly, a marriage ceremony culminated in the parties' declaration that they accepted each other as husband and wife. Common sense and tradition tells us this is the moment at which the parties' valid consent creates a marriage. Indeed, once solemnized, a marriage is presumed valid

---

[5] *Cantarella* applied prior law, stating that a marriage "'must be licensed, solemnized, authenticated, and the certificate of registry of marriage filed . . .; but noncompliance with its provisions by others than a party to a marriage does not invalidate it.'" (*Cantarella*, *supra*, 191 Cal.App.4th at pp. 921-922, citing former Civ. Code § 4200.) The Family Code superseded the Family Law Act without substantive change. (*Id*. at p. 919, fn. 1.) Wording changes in a statute from "shall" to "must" (or vice versa) without substantive changes means that the former and current versions are "identical, and are to be considered as having the same effect." (*Davis v. Superior Court* (1921) 184 Cal. 691, 693.)

(Evid. Code, § 663) and a person disputing its validity bears the burden of proving it void." (*Id*. at p. 924.)

The registration of the certificate does not bear on the issue of consent, and serves only a recordkeeping function "*after* the parties had solemnly consented to marriage in a ceremony and *after* the county clerk and the officiant had satisfied themselves the parties' consent was knowing, voluntary, and valid. Additionally, registration was the duty of an officiant . . . , i.e., of a *nonparty* whose noncompliance with statutory requirements did not void a marriage . . . ." (*Cantarella*, *supra*, 191 Cal.App.4th at p. 924.)

Nodding to the societal importance of recognizing the validity of marriages—given the significant property and inheritance rights marriage confers, with concurrent fiduciary and legal duties—the court concluded that the Legislature did not intend that a marriage be invalidated by the parties' failure to register the license. (*Cantarella*, *supra*, 191 Cal.App.4th at pp. 924-925.) The court recognized that its holding "could allow a party to conceal a marriage for tax reasons, but later claim it for purposes of spousal support" but determined that "[t]he tax consequences of our decision, if any, are not before us." (*Id*. at p. 926, fn. 12.)

## CONCLUSION

Here we conclude that the parties' retention of the license does not invalidate the marriage after the solemnization ceremony has taken place. The "necessary step of solemnizing" the marriage makes the union valid. (*Burnham v. Public Employees' Retirement System* (2012) 208 Cal.App.4th 1576, 1584-1585 [contrasting domestic partnerships, in which filing the declaration of partnership is the necessary step to validate the

9

union].)  The exchange of vows to take each other as spouses "symbolize[s] the irrevocable decision to go through with the union.  In the case of solemnization, once the parties say 'I do,' they cannot take the statement back. . . .  [I]t is the point in the process at which the parties can no longer change their minds about their decision to form a union."  (*Id.* at p. 1585.)

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover his costs on appeal.

CERTIFIED FOR PUBLICATION.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

10

Commissioner Patrick J. Perry, Judge Pro Tem

Superior Court County of San Luis Obispo

_____

Banick Hodges Law Corporation and John F. Hodges for Plaintiff and Respondent.

Ogden & Fricks, Roy E. Ogden and Sue N. Carrasco for Defendant and Appellant.