Anderson *v.* Anderson.

## PAULINE ANDERSON *v.* GARLIN ANDERSON.

To a suit upon a judgment rendered at law, in Virginia, the plea that it was obtained by fraud, is not available, but the judgment can only be directly impeached in chancery.

THIS cause was adjourned from the county of Brown.

It was an action of debt, founded upon a judgment recovered in the county of Notaway, of the commonwealth of Virginia. Defendant pleads, first, in general terms, that the judgment was obtained by fraud, upon which plea there is an issue in fact. In a second and in a third plea, the fraud relied upon is specially alleged. To these pleas there were general demurrers, upon which the cause was heard.

COLLINGS, for plaintiff.

HAMER and DEVORE, for defendant.

Judge GRIMKE delivered the opinion of the court:

It is remarkable that this question has never received a precise determination. As the books abound so fully in the general doctrine, that fraud avoids all judicial acts, and the proposition is so often asserted in terms which import that a judgment may for that cause be impeached collaterally; that one would expect to meet with several cases in which the question had been directly adjudged. In Borden *v.* Fitch, 15 Johns. 121, the defense was placed on the ground of want of jurisdiction, in the Supreme Court of Vermont, to decree a divorce, the defendant to the petition residing in another state, and having no notice of the proceedings. *It is, however, *said* by the court, that as the decree was obtained by false and fraudulent representations it was void, and Fermor's case, 3 Coke, 77, is relied upon as the only authority. It is surprising that a court, which had long before decided that a deed obtained by false representations could not be avoided at law, should uphold the doctrine that a judgment, a much more solemn instrument, might be impeached for that cause. In the case before them, it is unnecessary to decide upon the general question; because nothing is now better established than that where a judgment has been obtained without personal notice to the defendant, it is only to be regarded as a foreign judgment,

and is not comprehended in the provision of the constitution of the United States. But it is important to examine Fermor's case. It was a bill in chancery to annul a fine; that is, it was a proceeding directly instituted to get rid of a judgment at law. Richard Fermor, the plaintiff, demised land to the defendant, Thomas Smith, for twenty-one years. Afterward, Smith fraudulently levied a fine, to bar the plaintiff of the inheritance. And it appears to have been a great question then, whether the plaintiff could be relieved, even in chancery; for it is said that it was debated two days, before all the judges of England and the barons of the exchequer, when it was finally determined in his favor. So that Fermor's case, so far from being an authority in support of the position that a judgment ·may be impeached collaterally, is an authority the other way. In the case of Borden v. Fitch, however, it must be remembered that it was a third person, and not a party to the judgment, who was permitted to avoid it. But in Andrews v. Montgomery, 19 Johns. 162, and Shumway v. Stillman, 4 Cow en, the same general doctrine is repeated. It is said, the court had never understood that the decision in Mills v. Duryee, 7 Cranch, was intended to be carried so far as to preclude a party from showing fraud in the procurement of the judgment. In neither of these cases, also, was it necessary to decide upon that question; what is said is only by way of argument. In Mills v. Duryee it was held, that the judgment of a sister state was a record conclusive between the parties, and that it could only be denied by the plea of *nul tiel* record. It has been doubted (Shumway v. Stillman, 4 Cowen), whether it was intended to say that it was the only plea or the only general issue plea which could be pleaded. And this doubt is suggested in order to open the door to the doctrine that such a judgment may be impeached by showing want of jurisdiction in *the court or by show- [110· ing that it was fraudulently procured. As to the first, the suggestion is unnecessary, because the plea of *nul tiel* record reaches it; and as to the second, it becomes important first to establish the general doctrine that a judgment may be impeached collaterally for fraud before we can fasten any such implication upon the decision in Mills v. Duryee.

In Pierce v. Jackson, 6 Mass. 242, it was held that where one who has obtained a judgment upon a fraudulent contract sues the sheriff for a false return, he may show such frauds in his defense.

in favor of the other creditors. The case, then, differs in three particulars from the present: 1. The defense was permitted to a third person; that is, to the sheriff, who represented the creditors. 2. The sheriff himself was not a party to the original judgment. 3. There was no court in Massachusetts possessing chancery jurisdiction.

With regard even to foreign judgments, there appears now to be the strongest inclination to depart from the former doctrine, that they are only *prima facie* evidence. In Tarleton *v.* Tarleton, 4 M. & S. 21, where it was rigorously contended that a foreign judgment was re-examinable, Lord Ellenborough remarked that he did not sit at *nisi prius* to try a writ of error upon the proceedings of the court abroad. Lord Hardwicke had long ago maintained the same doctrine, and declared that where a court, *foreign* or *domestic*, that has jurisdiction of the case, makes the determination, it is conclusive and binding upon all other courts. Boucher *v.* Lawson, Cas. S. Hardwicke, 89. And in the late case of Martin *v.* Nicolls, 3 Simon, 458, the vice-chancellor, after a diligent examination of all the law on the subject, upheld, as the true doctrine, that foreign judgments were conclusive evidence and not open to examination, and *that this was the true result of the old authorities.* And any one who will undertake to consider the pressing and almost insuperable difficulties attendant upon a different state of the law, will be surprised that a contrary doctrine has ever been maintained.

If such is the view which is now taken of the efficacy of foreign judgments, what shall we say of the attempt to impeach, collaterally, a judgment of a sister state which has all the force and validity of a domestic judgment? That it can not be vindicated either upon principle or authority, and that although loose *dicta* in abundance may be found to countenance it, yet that it has no root, either in English or American jurisprudence. In Wightman 111] *v.* Wightman, 4 Johns. C. C. 343, which was a bill *filed to declare the marriage of the parties null on the ground of lunacy of the defendant, the court entertained the suit, saying that although the statute pronounced the marriage absolutely void, yet it was eminently proper that proceedings should be directly instituted, in some court of competent jurisdiction, to declare its nullity. A court of chancery, in a proper case, will interfere, after verdict and judgment at law, in cases of fraud. 2 Atk. 190; 2 Ves. jr. 135. Whether this is such a case is not now to be deter-

mined. That may seem to be a technical rule, which sends a party into another court for relief. But the adherence, to even technical rules, is attended with manifold advantages. A wise man, however high his faculties, will be disposed to observe them. The introduction of order, regularity, and precision into the practice contributes, more than any other circumstance, to the due administration of justice. It banishes disorder and confusion from the court-house, and establishes system and arrangement in the examination of every controverted question.