[Cite as *Trunk v. Coleman*, 2024-Ohio-470.]

# Court of Appeals of Ohio, Eighth District

County of Cuyahoga
Nailah K. Byrd, Clerk of Courts

CHRISTINE ANN TRUNK

Plaintiff-Appellee,  COA NO.  LOWER COURT NO.
112392  DR-22-388561

-vs-  CUYAHOGA COUNTY COURT OF COMMON PLEAS

ROBERT M. COLEMAN

Defendant-Appellant.  MOTION NO. 571737

Date: February 2, 2024

### Journal Entry

The Journal Entry and Opinion released on January 25, 2024 (2024-Ohio-244), in the above-captioned matter contained clerical errors on the cover page and paragraph 1. The errors are hereby corrected nunc pro tunc as follows:

On the cover page and paragraph 1, "Christina" is corrected to read "Christine."

It is hereby ordered that said Journal Entry and Opinion of January 25, 2024, be amended nunc pro tunc to correct the errors on the cover page and paragraph 1, as stated above.

This is a clerical error only. This nunc pro tunc does not affect the final judgment of this opinion.

Presiding Judge Mary Eileen Kilbane, Concurs
Judge Lisa B. Forbes, Concurs

Emanuella D. Groves
Judge

CHRISTINE ANN TRUNK, :

    Plaintiff-Appellee, :

                                    No. 112392

    v. :

ROBERT M. COLEMAN, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations
Case No. DR-22-388561

---

***Appearances:***

Alexander R. Folk, *for appellee*.

Stafford Law Co., L.P.A., Joseph G. Stafford, Nicole A. Cruz, and Kelley R. Tauring, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Robert Coleman ("Appellant") appeals the judgment entry of the Cuyahoga County Court of Common Pleas, Domestic

Relations Division, which granted appellee, Christine Trunk's ("Appellee"), complaint for annulment. For the following reasons, we affirm.

**Facts and Procedural History**

{¶ 2} Appellant filed an ex parte petition to establish the fact of marriage to Appellee in the Superior Court of California, Humboldt County, on September 23, 2021. The petition alleged that he and Appellee were married in two self-solemnizing wedding ceremonies on October 19, 2016. Appellant did not direct the Humboldt County Clerk of Court to serve Appellee with the petition. The court held a hearing on the petition on September 30, 2021. Appellee did not appear at the hearing. (Tr. 154.) The petition was granted ex parte, and Appellant submitted the judgment entry to the California Department of Public Health ("CDPH"). CDPH registered the court-ordered delayed marriage certificate on February 17, 2022.

{¶ 3} Appellee filed a complaint for annulment in Cuyahoga County Common Pleas Court, Domestic Relations Division, on February 1, 2022. Appellee alleged that she never consented to marry Appellant, never obtained a marriage license, nor participated in a ceremony. Appellant responded with a motion to dismiss, which the trial court denied. The matter proceeded to trial on December 13, 2022.

{¶ 4} Appellant testified that he initially did not know what date he and Appellee were married, but later recalled they were married on October 19, 2016, the day before his twin sister was murdered at exactly 9:47 p.m. Appellant proffered

several exhibits, including text messages and photographs. However, none of the exhibits depicted a wedding ceremony nor referenced an actual wedding. (Tr. 158.)

{¶ 5} Appellee acknowledged that she was Appellant's on-and-off girlfriend between August 2016 and July 2021. It is undisputed that Appellee lived with Appellant in California from August 12, 2016, through October 19, 2016. Appellant's twin sister was attacked on October 20, 2016, and later died. Appellee traveled with Appellant to Tennessee, where his sister lived, for Appellant to obtain custody of his deceased sister's children. Appellee alleged that she volunteered on a farm in California between October and December 2016 before returning permanently to Ohio.

{¶ 6} In January 2017, Appellee moved in with her mother. She secured student loans and enrolled in massage therapy school. Appellee documented her marital status as "single" on her loan application. Appellant and Appellee both testified they filed their income taxes as unmarried individuals between 2016 and 2021.

{¶ 7} Appellant moved to Ohio in May 2017. He lived in a hotel for one week, then with Appellee and her mother for approximately one week, before purchasing a home in Columbia Station, Ohio. Appellant secured a mortgage loan and recorded the mortgage deed as an "unmarried individual" in June 2017. Appellee testified that she lived with Appellant from January 2018 until she ended the relationship and obtained an individual lease for an apartment in Middleburg Heights on July 4, 2021.

{¶ 8} Appellant elicited the following testimony from Appellee regarding her consent to marry him and knowledge of Appellant's filing of the petition for a delayed marriage certificate:

Q. So, to clarify, you didn't have any knowledge, I never requested you to sign a marriage certificate?

APPELLEE. I never signed a marriage certificate.

Q. Prior to November 22, '21?

APPELLEE. I never signed wrote my signature on anything. I never wrote m[y] signature on —

* * *

I never wrote my name on any petition, any document. I never agreed to this marriage, never.

* * *

Q. When did you first find out about the petition to establish the fact, date, and time of marriage?

APPELLEE: November 22, 2021.

Q. Did you receive notice of hearing before that?

APPELLEE: No.

Q. Did you have any knowledge of the hearing in September?

APPELLEE: No.

(Tr. 59.)

{¶ 9} Appellee had the following exchange with the court, as it relates to her consent to marry Appellant:

THE COURT: Did you consent to a marriage?

APPELLEE: I did not consent to a marriage.

(Tr. 68, 69.)

{¶ 10} The trial court issued a judgment entry on January 10, 2023, granting Appellee's complaint for annulment. A nunc pro tunc judgment entry of annulment with findings of fact and conclusions of law was issued on January 11, 2023.

{¶ 11} During the pendency of the case, Appellant filed numerous motions for delay and harassment. Accordingly, the court deemed Appellant a vexatious litigator. The court ordered Appellant to seek leave of court before instituting legal proceedings in the court of claims, any court of common pleas, municipal court, or county court. Furthermore, the January 11, 2023 order required Appellant to obtain leave of court before instituting proceedings in the court of appeals under Ohio law. Appellant's initial appeal was dismissed when he failed to seek leave to appeal the trial court's order. Upon reconsideration, we granted Appellant leave to proceed. Appellant now appeals, assigning three assignments of error for review.

### Assignment of Error No. 1

The trial court erred as a matter of law and abused its discretion by denying the Appellant's motion for continuance to obtain substitute counsel.

### Assignment of Error No. 2

As a matter of law, the trial court erred, abusing its discretion by prohibiting the Appellant from introducing any evidence or witnesses at trial, violating his due process rights.

## Assignment of Error No. 3

The trial court erred as a matter of law and abused its discretion by finding that no marriage occurred and that the order delayed certificate of marriage issued by the Superior Court of California was a nullity.

## Law and Analysis

## Motion to Continue Trial

{¶ 12} Appellant argues in his first assignment of error that the trial court erred when it denied his motion for continuance. We find Appellant's assignment of error disregards his purposeful conduct and other relevant factors the trial court considered when it denied his request for continuance. Consequently, Appellant's contention is without merit.

{¶ 13} The decision to grant a motion for an extension of time lies within the trial court's sound discretion and will be reversed on appeal only for an abuse of discretion. *Johnson v. Univ. Hosp. Case Med. Ctr.*, 8th Dist. Cuyahoga No. 90960, 2009-Ohio-2119, ¶ 5. *See also Kinas v. Kinas*, 8th Dist. Cuyahoga No. 98965, 2013-Ohio-3237, ¶ 28. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude was unreasonable, arbitrary, or unconscionable. *Stratton v. Stratton*, 8th Dist. Cuyahoga No. 107798, 2019-Ohio-3279, ¶6, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} A reviewing court should consider the length of the delay requested, whether prior continuances have been granted; inconvenience to the litigants, the court, and witnesses; whether the requested delay is legitimate rather than dilatory,

purposeful, or contrived; whether the defendant contributed to the circumstances underlying the request; and any other relevant factors. *Depompei v. Santabarbara,* 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 41, *Rawlin Gravens Co., L.P.A., v. Jatsek Constr. Co.,* 8th Dist. Cuyahoga No. 100587, 2014-Ohio-1952, ¶ 22, citing *State v. Unger,* 67 Ohio St.2d 65, 67-68, 616 N.E.2d 186 (1981).

{¶ 15} Appellant argues that he attempted to obtain substitute counsel, but he could not find an attorney due to the issues involved in the case and the prohibition on continuances. However, the following highlights of the record reveal Appellant's actions contributed to the underlying circumstances that necessitated his request for a continuance.

{¶ 16} Appellant first filed a motion for an extension of time to answer the complaint on March 10, 2022, which was granted until April 11, 2022. On April 11, 2022, an attorney entered a notice of appearance, but instead of filing an answer, he filed a motion to dismiss, which was denied, on May 9, 2022. Appellant was ordered to answer the complaint within fourteen days. On May 20, 2022, Appellant's attorney filed a motion to withdraw and motion for an extension of time to answer. Counsel's request was due, in part, to Appellant discharging him. (App. Brief May 20, 2022). Both motions were granted, and the pretrial was continued until June 6, 2022.

{¶ 17} Appellant filed an answer, pro se, on May 24, 2022, and a second motion to dismiss on July 11, 2022. The trial court denied Appellant's motion to dismiss and stated that no further continuances would be granted due to

substitution of counsel. On September 23, 2022, a second attorney filed a notice of appearance for Appellant, and the court continued the trial date of November 16, 2022, to give Appellant's new counsel time to prepare for trial.

{¶ 18} The new trial date was December 13, 2022. Appellant's second attorney filed a motion to withdraw on October 7, 2022, and a motion for continuance. On October 12, 2022, the trial court granted the motion to withdraw. The journal entry reflects that the trial court weighed the harm a continuance would cause Appellee, the age of the case, and Appellant's right to counsel when considering Appellant's request for a continuance. The trial court ultimately denied the motion for continuance, and the final pretrial remained set for October 26, 2022. Also, the December 13, 2022 trial date remained.

{¶ 19} Appellant filed several pro se motions throughout the pendency of the case, including a motion for conciliation[1] on November 27, 2022, which the court denied. He also filed an answer and the following motions: temporary support; subpoenas; sanctions (two hundred fourteen pages); dismissal; continuance; reconsideration of temporary support; and mutual access to the marital residence. The record reflects that many of these motions were frivolous.

{¶ 20} Appellant's third attorney filed a limited notice of appearance on November 30, 2022, followed shortly by a motion to withdraw on December 6, 2022. Counsel cited the Rules of Professional Conduct, which require an attorney

---

[1] The Ohio legislature has not codified conciliation within the Revised Code. Appellant obtained the motion template from an Arizona court's website.

to withdraw representation when there is a fundamental disagreement with the actions a client wants the attorney to take. Prof.Cond.R. 1.16(B)(4). The trial court granted the motion to withdraw.

{¶ 21} Moreover, the court noted in its findings of fact and conclusions of law that Appellant took actions throughout the proceedings that appeared to be for delay. Furthermore, the trial court found Appellant to be a vexatious litigator due to the number of voluminous, frivolous motions he filed. One such example was a motion for access to the "marital home" that Appellant filed to obtain court-ordered access to Appellee's apartment, though he had never lived there. The appellant's conduct throughout these proceedings may have made it difficult for the Appellant to find an attorney willing to engage in frivolous motion practice on his behalf. Doing so would violate the Professional Rules of Conduct and subject a licensed attorney to sanctions.

{¶ 22} Given the court's initial responsiveness to Appellant's requests for extensions of time and continuances and Appellant's senseless pro se motions, we find that the trial court did not abuse its discretion when it denied Appellant's final motion to continue. Accordingly, Appellant's first assignment of error is overruled.

**Exclusion of Evidence**

{¶ 23} Appellant argues in his second assignment of error that the trial court erred as a matter of law and abused its discretion when it prohibited him from introducing any evidence or witnesses at trial. We find Appellant's argument is without merit.

{¶ 24} Decisions involving the granting or denying a motion in limine are reviewed for an abuse of discretion. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. Generally, a trial court has broad discretion concerning decisions on the admission and exclusion of evidence. *Barton v. Cty. of Cuyahoga*, 2020-Ohio-6994, 166 N.E.3d 129, ¶ 23 (8th Dist.), citing *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20. We will not reverse a court's order concerning the conduct of discovery absent an abuse of discretion. *See Arnold v. Am. Natl. Red Cross*, 93 Ohio App.3d 564, 639 N.E.2d 484 (8th Dist.1994).

{¶ 25} In the instant case, Appellee filed a motion in limine on December 7, 2022, to exclude evidence and witnesses that Appellant failed to disclose he intended to introduce at trial. "One of the purposes of the Rules of Civil Procedure is to eliminate surprise." *Djukic v. Turner*, 8th Dist. Cuyahoga No. 88849, 2007-Ohio-4433, ¶ 13.

{¶ 26} The trial court ordered the parties to begin discovery by journal entry on May 19, 2022. The parties were ordered to exchange exhibits no later than seven days before trial in the court's July 11, 2022 case management order. Additionally, the parties were required to file trial briefs before the December 13, 2022 trial. Appellant failed to comply with the trial court's discovery orders.

{¶ 27} We have previously held that pro se litigants are presumed to have knowledge of the law and correct legal procedure and are held to the same standards as all other litigants. *Hudson & Keyse LLC v. Sherrills*, 8th

Dist. Cuyahoga No. 110366, 2022-Ohio-126, ¶ 20, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). Both parties filed briefs, but appellant failed to disclose witness names or an exhibit list in his brief. A trial court does not abuse discretion by excluding undisclosed evidence that gives rise to unfair surprise. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 85, 482 N.E.2d 1248 (1985). The trial court permitted Appellant to proffer the excluded exhibits for appellate review. This court has thoroughly reviewed the entire record and finds that the trial court did not abuse its discretion when it granted Appellee's motion in limine. Accordingly, Appellant's second assignment of error is overruled.

**California Marriage Laws**

{¶ 28} In his third assignment of error, Appellant argues that the trial court committed an error of law and abused its discretion by finding that no marriage took place and declaring the delayed certificate of marriage issued in California invalid and the alleged marriage null and void ab initio. This assignment of error is without merit.

{¶ 29} As a preliminary matter, it is worthy to note that the underlying facts of this case are particularly bizarre primarily due to Appellant's actions. The Appellant secured a judgment entry establishing the facts of an alleged marriage after an ex parte hearing in California. He subsequently obtained a delayed marriage certificate that he now claims is conclusive proof of his alleged marriage to Appellee. Notably, Appellee had no knowledge of his actions, did not consent, nor participate in the California court proceedings.

{¶ 30} Before reviewing the ultimate issue of the trial court's granting Appellee's complaint for annulment, this court must determine if there is a valid California marriage. In doing so, we must 1) determine the effect of the Appellant's delayed marriage certificate; 2) examine Appellee's collateral attack on Appellant's claim of a valid marriage; 3) consider the application of the Full Faith and Credit doctrine under Ohio law as it pertains to the alleged marriage; and 4) determine the trial court's inherent power to: employ its equitable authority to declare the marriage certificate invalid and the alleged marriage null and void; and grant Appellee's complaint for annulment.

{¶ 31} "Generally, the validity of a marriage is determined by the lex loci contractus; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere." *Mazzolini v. Mazzolini*, 168 Ohio St. 357, 358, 155 N.E.2d 206 (1958), *McDowell v. Sapp*, 39 Ohio St. 558, 560 (1883). "Ohio recognizes all other out-of-state marriages, if valid in the state performed, and even if not authorized nor validly performed under Ohio law, such as marriages between first cousins, marriages of certain minors, and common law marriages." *Obergefell v. Wymyslo*, 962 F.Supp.2d 968, 973 (S.D.Ohio 2013). Therefore, as an initial matter, we must examine California law to determine if the parties have a valid California marriage.

**Certificate of Marriage is Not Conclusive**

{¶ 32} Appellant claims the certificate of delayed marriage is conclusive proof that he and Appellee were married in 2016. We are confronted with whether

the trial court is required to accept this delayed marriage certificate as conclusive evidence of the validity of a California marriage when it was obtained through an ex parte proceeding. The standard of review applicable to this issue is an abuse of discretion. *Bevan v. Bevan*, 11th Dist. Lake No. 2005-L-018, 2006-Ohio-2775, ¶ 22.

{¶ 33} The California Legislature has enacted a comprehensive scheme regulating marriage in California, "setting forth in detail the procedures to be followed." *Chaney v. Netterstrom*, 21 Cal.App.5th 61, 65, 229 Cal.Rptr.3d 860 (2018), citing *Lockyer v. City & Cty. of San Francisco*, 33 Cal.4th 1055, 1079, 17 Cal.Rptr.3d 225, 95 P.3d 459 (2004). The marriage statutes provide procedures for validating and recording contested and uncontested marriages.[2] An uncontested judgment, declaring a marriage, entered by consent or stipulation, has a conclusive effect on a judgment rendered after trial. *Needelman v. DeWolf Realty Co., Inc.*, 239 Cal.App.4th 750, 759, 191 Cal.Rptr.3d 673 (2015). However, absent conclusive proof, a California judgment establishing the fact of marriage is open to collateral attack. *In re Marriage of Seaton*, 200 Cal.App.4th 800, 808, 133 Cal.Rptr.3d 50 (2011).

---

[2] Cal.Fam. Code 425 provides the procedure for validating an uncontested marriage by stipulation or agreement of the parties.

Cal.Fam.Code 309 provides procedures for validating contested marriages and marriages when a party is unavailable.

Cal.Fam.Code 309 also provides procedures for establishing the fact of marriage through an ex parte proceeding under Health and Safety Code Section 103450.

{¶ 34} California's Civil Rules establish the procedure for a party or nonparty to attack the collateral effect of a judgment. California Code of Civil Procedure ("CCP") 1908 states in relevant part:

> At any time before a final judgment, as defined in Section 577, a determination of whether the judgment, verdict upon which it was entered, or a finding upon which it was entered is to be binding upon a nonparty under this subdivision or whether such nonparty is entitled to the benefit of this subdivision may, on the noticed motion of any party or any nonparty that may be affected by this subdivision, be made in the court in which the action was tried or in which the action is pending on appeal. If no such motion is made before the judgment becomes final, the determination may be made in a separate action. If appropriate, a judgment may be entered or ordered to be entered pursuant to such determination.

Cal.Civ.Proc.Code 1908.

{¶ 35} Generally, CCP 1908 applies to marriage record judgments. However, California law has established that ex parte "marriage record" orders under the Health and Safety Code are viewed as administrative functions or acts of recordation that the legislature has authorized the courts to perform. *Schmidt v. Retirement Bd.*, 37 Cal.App.4th 1204, 44 Cal.Rptr.2d 297 (1995). These records are not orders or judgments to which effect must be given under the Code of Civil Procedure. *Id.* Thus, CCP 1908 does not apply to orders purporting to establish the facts of a marriage that were obtained ex parte. *Rediker v. Rediker,* 35 Cal.2d 796, 803, 221 P.2d 1 (1950), citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct.652, 94 L.Ed.865 (1950).

{¶ 36} A judgment of a court purporting to bind a person by the findings of fact of an earlier action, when the person was not afforded proper notice of the

earlier pending action, deprives that person of property without due process of law and is prohibited by the Fourteenth Amendment to the United States Constitution. *Id.* The statutory scheme under the California Health and Safety Code does not accord to ex parte "marriage record" orders conclusive or even prima facie effect, and to give these orders such evidentiary weight in an action involving a non-consenting party infringes on that party's due process rights. *See Schmidt* at 1207. Appellant's argument that the record of marriage he obtained ex parte validated the parties' marriage, under California law, because it is a judgment of the court given effect by CCP 1908, is contrary to California's marriage laws and Appellee's right of due process.

{¶ 37} Importantly, Appellant failed to demonstrate that Appellee had notice of Appellant's filing a petition for an order to establish the fact of marriage. Given the clear and substantial evidence that Appellee had not been served, the trial court determined that Appellee was not notified of the California proceedings. When asked if the Appellant directed the court clerk in Humboldt, California, to serve Appellee with the petition, he responded, "No. They said I was the only person they were serving. They said no one else needed to be served." The record reveals that Appellant's efforts to notify Appellee of the pending proceedings in California legitimately came after he obtained a judgment establishing the fact of marriage.

{¶ 38} Appellant testified extensively about his measures to inform Appellee that he had initiated proceedings in California to "validate" the alleged marriage. He texted Appellee from numerous unknown numbers, had a friend attempt to give the

documents to Appellee, and caused a packet containing the petition to be left on the outside of Appellee's car on November 22, 2021. Consequently, the trial court found that Appellee was not notified of the California proceedings and that the judgment was obtained ex parte.

{¶ 39} The trial court correctly determined that the delayed certificate of marriage Appellant obtained through an ex parte proceeding is merely a statistical record acknowledging the late registration of an alleged marriage, not conclusive proof of marriage. *See id.* Consequently, the certificate is subject to collateral attack and invalidation by Appellee.

**Marriage Without Consent is Invalid**

{¶ 40} Appellee claims the alleged marriage is invalid because she never consented to marry Appellant and had no notice of the California proceedings. The "invalidity of a void marriage may be shown collaterally in any proceeding in which the fact of marriage may be material." *In re Marriage of Seaton*, 200 Cal.App.4th 800 at 808, 133 Cal.Rptr.3d 50. Appellee's argument in support of annulment is lack of consent and notice.

{¶ 41} It is well settled that a valid marriage requires the parties' consent, capacity to consent, solemnization, and mutual assumption of marital rights, duties, or obligations under California law. *Sharon v. Sharon*, 75 Cal. 1, 8, 16 P. 345 (1888). Clear and convincing proof that a party did not consent to marry invalidates a judgment establishing the fact of marriage, and the injured party is entitled to a

declaration of nullity. *In re Marriage of Cantarella*, 191 Cal.App.4th 916, 923, 119 Cal.Rptr.3d 829 (2011).

{¶ 42} California and Ohio both recognize that a void marriage is invalid for all purposes from the moment of its inception, whether or not it has been so declared in a court of law. *Lockyer*, 33 Cal.4th 1055, at 1114, 17 Cal.Rptr.3d 225, 95 P.3d 459 (2004); *see Darling v. Darling*, 44 Ohio App.2d 5, 7, 335 N.E.2d 708 (8th Dist.1975). In the instant case, the trial court found that the judgment of the fact of marriage was void ab initio because Appellee demonstrated by clear and convincing proof that she never consented to marry Appellant and never solemnized a marriage. The fundamental requirement to establish the existence of a common law marriage is consent between the parties. *See In re Estate of Shepherd*, 97 Ohio App.3d 280, 283, 646 N.E.2d 561 (3d Dist.1994). Clear and convincing evidence establishes a high probability of the existence of the disputed fact, more significant than proof by a preponderance of the evidence. *Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC*, 221 Cal.App.4th 102, 113, 163 Cal.Rptr.3d 874 (2013). Appellee claims she did not consent to marry Appellant, sign a marriage license, or solemnize the marriage. The test for determining the existence of a valid marriage is fact-specific. *Bevan*, 11th Dist. Lake No. 2005-L-018, 2006-Ohio-2775, at ¶ 25. When there is a dispute about the validity of a marriage, the trier of fact is charged with determining the weight and credibility of witnesses and "is free to believe all, part, or none of the testimony presented to it." *Sulfridge v. Kindle*, 4th Dist. Adams

No. 04CA795, 2005-Ohio-3929 ¶20. A trial court's ruling will not be disturbed absent an abuse of discretion. *Id.*

{¶ 43} Both parties testified during the trial. Appellee testified that she had never consented to marry Appellant. There was no marriage license nor pictures of the wedding ceremony. There were text messages that reflected the parties were "boyfriend" and "girlfriend" long after the date of the alleged marriage.

{¶ 44} In regard to finances, both Appellant and Appellee filed taxes individually. Appellant claims that he only filed his taxes individually so that Appellee would not get in trouble. Additionally, Appellee applied for her student loans as an unmarried individual, and Appellant purchased a home as an unmarried individual. The loan, mortgage deed, and tax filings demonstrated their single status.

{¶ 45} For the alleged marriage, Appellant claims he did not initially remember the marriage date but later recalled two ceremonies on the same day, one at 10:00 a.m., and the second at exactly 9:47 p.m., on October 19, 2016. He testified that the officiant who married them died, and the marriage license they obtained before the ceremony was lost or destroyed.

{¶ 46} Importantly, the trial court found Appellant's testimony contradictory and delusional. Appellant relied on several self-serving affidavits to obtain the ex parte judgment in California. Appellant executed several affidavits in support of his claim that the parties were married. The trial court noted that

Appellant's claim arose after Appellee ended the relationship. Moreover, the court found that Appellant's affidavits in the instant case were not credible.

{¶ 47} Furthermore, the record supports by clear and convincing evidence the trial court's findings of fact and conclusions of law because it contains no credible evidence supporting the elements of marriage between Appellant and Appellee. Accordingly, the trial court did not abuse its discretion when it found that the judgment recording the facts of the parties' alleged marriage is invalid and the alleged marriage is null and void under California law.

**Void Judgments are Not Entitled to Full Faith and Credit**

{¶ 48} Now, Appellant argues that his out-of-state judgment is accorded the Full Faith and Credit of an Ohio judgment. The decision to give Full Faith and Credit to another state's court decisions is a question of law. We review legal questions under a de novo standard of review. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). A de novo review requires an independent review of the lower court's decision without deference to that court's decision. *Brown v. Cty. Commr.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). *Rice v. Flynn*, 9th Dist. Summit No. 22416, 2005-Ohio-4667, ¶ 28.

{¶ 49} A valid judgment of another state is entitled to Full Faith and Credit under the federal Constitution and Ohio statutes. *Anderson v. Anderson*, 8 Ohio 108, 109 (1837). However, a void judgment is not entitled to the Full Faith and Credit of another state. *Id.* When a court lacks personal jurisdiction over the respondent to a petition, resides in another state, has no notice of the proceedings,

and false and fraudulent representations obtained the decree, the judgment is void. *Id.* Having previously determined the certificate of delayed marriage void, we find the California judgment is not entitled to Full Faith and Credit under Ohio law.

**Annulment of Invalid Marriage**

{¶ 50} Appellee has collaterally attacked the validity of the alleged marriage by filing an annulment action in Ohio. However, Appellant argues that Ohio's statutory scheme does not permit the trial court to grant an annulment when determining a marriage is void. We disagree.

{¶ 51} It is well-settled law that an Ohio domestic relations court is a court of equity that may exercise its ordinary powers to declare a marriage a nullity, void ab initio, upon a determination that the alleged marriage is invalid. *Waymire v. Jetmore*, 22 Ohio St. 271, 274 (1872). *See Newell v. Newell,* 23 Ohio App.2d 149, 150, 261 N.E.2d 278 (5th Dist.1970). The court's equitable powers are also statutorily memorialized in R.C. 3105.011, which states in relevant part:

> (A) The court of common pleas, including divisions of domestic relations courts, has full equitable powers and jurisdiction appropriate to determining all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist concerning any such matter.

\* \* \*

> (B)(2) Actions and proceedings under Chapters 3104. \* \* \*.

{¶ 52} Appellee argues that the order of declaration of marriage was procured fraudulently using false affidavits in the California Superior Court.[3] The California court subsequently relied on these false affidavits and granted Appellant's request for an order injuring Appellee. The trial court accepted Appellee's collateral attack on the marriage.

{¶ 53} The record reflects that Appellant manipulated California's complicated marriage laws. These laws permit an individual, including one not a party to the marriage, to obtain a judgment order of the facts of a marriage. Clearly, Appellant used the California judgment in Ohio in an attempt to validate this fictitious marriage, all without Appellee's consent. Furthermore, it is worth noting that Appellant included case law from several states that permit common law marriage and informed Appellee that he intended to establish a marriage in other states.

{¶ 54} Ohio's annulment statute under R.C. 3105 does not address these unusual facts. However, R.C. 3103.011 grants the domestic relations court full equity powers and jurisdiction in domestic relations matters. *Miller v. Miller*, 92 Ohio App.3d 340, 347, 635 N.E.2d 384 (6th Dist.1993). Therefore, Ohio domestic relations courts may exercise their equitable authority by statute and common law when the facts and circumstances demand it.

---

[3] Count 8 of Appellee's complaint for annulment states: 8. Plaintiff states that she desires an annulment from the defendant on the grounds that the marriage acknowledgement was obtained through deception and fraud.

{¶ 55} Appellee has proven by clear and convincing evidence she never consented to marriage with Appellant. Therefore, Appellee is entitled to a declaration of nullity. The trial court did not abuse its discretion when it exercised its equitable authority by issuing a judgment of nullity to bar Appellant from further perpetuating an alleged marriage to Appellee. Accordingly, the trial court properly granted Appellee's petition for annulment.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR